GEORGE LEASK et al., as Executors of HUDSON HOAG-
LAND, Deceased, Respondents, *v.* CHARLES F. HOAG-
LAND et al., Defendants, and ELLEN B. HILL et al.,
Appellants.

Evidence — decedent's estate — presumption from delivery of
check — value and import, as evidence, of entries on check stubs
of decedent made by deceased secretary or bookkeeper of dece-
dent — when such evidence insufficient to establish such checks
were loans.

1. In the absence of explanation, the presumption arising from
the delivery of a check is that it was delivered in payment of a
debt and not as a loan; but it may represent a loan or a gift, or
money of the drawer, to be applied by the drawee to the use of the
former as his agent or otherwise.

2. Where nothing is shown of a book entry other than that it was
made by a person, since deceased, in the regular course of an employ-
ment, trustworthiness should not be given to its statement of facts,
further than as their import is of matters presumably within the
personal knowledge of the person who made the entry by reason
of that employment. Where entries are private memoranda of cash
transactions they should be received with greater caution.

3. Among the assets of a testator, who was unmarried and child-
less, his executors found a number of his paid checks to the order
of and indorsed by this defendant, his nephew. The trial court
found that these checks represented loans of money to defendant.
The executors also found and offered in evidence entries on the
stubs of the first two of these checks which it is claimed tended to
prove that fact. These memoranda were made by a person who
acted as private secretary of deceased although the precise nature
or extent of his duties does not appear and it can only be presumed
that he was directed to draw the checks in question. Plaintiff, hav-
ing regard to a then existing indebtedness by defendant to testator
and to the defendant's lack of means, also relied upon the pre-
sumption that the checks following the first two were loans. *Held,*
that the checks in question were admissible to prove, and they did
prove, that the defendant received them and used the testator's
moneys for some purpose. Their stub entries, while competent as
memoranda of the issuance of the checks produced, were incom-
petent to prove anything more, in the absence of evidence showing

some personal knowledge in the writer. The circumstances sufficed to show that the checks were not in payment of a debt; but they did not suffice either to show, or as a basis for the presumption, that, as between the fact of a loan, or a gift, the transaction was of the former, rather than of the latter, kind.

4. The plaintiffs offered in evidence certain check stubs in the testator's check book, bearing dates antecedent to the date of a note given him by defendant, and having the name of defendant, with figures representing sums of money. They did not produce any checks corresponding to these stubs, but it is contended that they had the same probative force as if the checks had been produced and showed payments thereby, which "culminated in the note." *Held,* that the entries were incompetent to prove any transaction which they purported to represent.

*Leask* v. *Hoagland,* 144 App. Div. 138, reversed.

(Argued March 5, 1912; decided April 2, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 18, 1911, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*W. C. Carroll* and *Thomas E. Boyd* for appellants. The admission of check stubs in evidence was error. (Wigmore on Ev. § 1539; *Vosburgh* v. *Thayer,* 12 Johns. 461; *Smith* v. *Rentz,* 131 N. Y. 169; *Simons* v. *Steele,* 82 App. Div. 202; *Dykman* v. *Northbridge,* 80 Hun, 258; *Peck* v. *Von Keller,* 70 N. Y. 604.) No basis of facts is established for any presumption that the checks aggregating $5,108.45 constitute an indebtedness of Charles F. Hoagland to the estate. (*Manning* v. *J. H. Ins. Co.,* 100 U. S. 693; Best on Ev. 95; *Diel* v. *M. P. R. R. Co.,* 37 Mo. 454; *O'Gara* v. *Eisenlohr,* 38 N. Y. 296.)

*J. Hampden Dougherty* for respondents. There was no error in the reception of check stub entries. (*Livingston* v. *Arnoux,* 56 N. Y. 517; Abbott's Trial Ev. 799; *Dakin*

v. *Walton*, 85 Hun, 561; *Merrill* v. *Ithaca R. R. Co.*, 16 Wend. 586; *Bentley* v. *Falker*, 24 App. Div. 562; *Leland* v. *Cameron*, 31 N. Y. 121; *Fisher* v. *Mayor, etc.*, 67 N. Y. 77; Greenl. on Ev. § 115; *Post* v. *Kennerson*, 52 L. R. A. 545; Wharton on Ev. [3d ed.] §§ 238-240; *Meyer* v. *Brown*, 130 Mich. 449; *Lassone* v. *B. & L. R. R. Co.*, 17 L. R. A. 525; *Vosburgh* v. *Thayer*, 12 Johns. 461.)

GRAY, J. The plaintiffs are the executors of Hudson Hoagland, deceased; whose will disposed of the residuary estate among his nephews and nieces in proportions stated. The defendant Charles F. Hoagland is a nephew, who had assigned to different persons portions of his share in the residuary estate. This action was brought against him and his assignees that it might be adjudged what amounts were due to the defendants and the order of their payment, "after the set offs of said defendant's, (Hoagland's), indebtedness." Questions had arisen on the accounting of the plaintiffs, as executors, upon objections filed by Hoagland to their offsetting against his share a promissory note for $10,000, made by him to their testator, which the surrogate refused to decide for lack of jurisdiction. Thereupon, this action was commenced; in which it is claimed by the plaintiffs that Charles Hoagland was, at the testator's death, further, indebted to him, beyond the amount due upon the above-mentioned note, for moneys loaned in sums aggregating $5,108.45. This alleged indebtedness had not been claimed upon the accounting in the Surrogate's Court. Whether the amounts of the note and of these alleged loans constituted debts, which should be charged against his share, was the issue presented and that was decided in favor of the plaintiffs, at the Special Term. The Appellate Division affirmed that determination, by a divided court, and, upon this appeal, the one question presented relates to the sufficiency of the evidence to establish the fact of an indebtedness from the defendant

Hoagland to the testator beyond what was shown by his note for $10,000.

The testator was unmarried and childless, and had retired from active business. His living relatives were a brother and a number of nephews and nieces. He had accumulated a large estate, consisting in personalty, which he managed, himself; employing a man named Aitken to assist him, as secretary, or bookkeeper. Aitken survived the testator; but died before the trial of this action. Among the assets, the plaintiffs found Charles Hoagland's promissory note for $10,000, which is no longer in question, and they, also, found a number of paid checks running to his order, from a date subsequent to that of the note up to a short time before the testator's death, a period of nearly three years, indorsed by him and aggregating $5,108.45. The trial court found that these checks represented loans of money and was influenced, in making the finding, as is apparent from other findings, by certain entries made upon some of the stubs, from which checks had been detached, and by Charles Hoagland's condition of poverty and indebtedness during the time. The plaintiffs, upon whom the burden rested to establish the indebtedness claimed, relied upon the checks, with their indorsements; upon entries on the stubs of the first two of these checks, as indicating that they were loans, and upon the presumption that the checks following the two first were likewise loans, having regard to Charles Hoagland's existing indebtedness and to his lack of means. They invoke the rule that the law, in such a case, does not presume a gift and argue that as the circumstances plainly negative the idea of any indebtedness on the testator's part, at the time, the checks could only have represented loans of money. The presumption that they were such, the plaintiffs endeavored to fortify by evidence, received over objection and exception, of entries upon check stubs, at dates preceding the note for $10,000, which contained the name of Charles Hoagland, with a

date and a sum in figures. The amounts in these entries aggregated $9,900, and it is claimed that they proved the delivery of corresponding checks for loans, which " cul- minated " in the giving of the note for $10,000. The checks corresponding to these stubs were not found and the entries, themselves, were not in the handwriting of the testator, but in that of Aitken, the deceased secretary. The evidence in the case is meagre and casts no light upon the transactions between the testator and his nephew, Charles, other than may be received from circumstances. These were, as we have seen, Charles' note, the subsequent checks, his impecunious and needy condition, and some notations on check stubs made by a third person.

Considering the evidence relating to the issuance of the checks, which are relied upon as constituting the loans of money, we find that, after proving their indorsement by Charles Hoagland and their payment, entries upon the stubs of two of the checks were read in evidence. The entry relating to the first of the checks, drawn after Charles had given his note to the testator, was " April 12, 1901. Charles F. Hoagland act. to be paid $100 per week, $1,000." The second of the entries reads: " Feb- ruary 20, 1902. George Leask & Co. for loan to give to Chas. F. Hoagland, $500." These entries were in Aitken's handwriting and their admissibility is claimed as an exception to the rule excluding hearsay evidence, because made in the course of an official employment by one hav- ing no interest to misstate the facts and who has since deceased. (*Livingston* v. *Arnoux*, 56 N. Y. 507.) The rule, as one of necessity, exists; but its operation is con- trolled by the facts of the case. The position of Aitken with the deceased, as shown by the testimony of wit- nesses, who knew of their relations, was that of a pri- vate secretary, having some charge of his books. The deceased was not in business at this time, otherwise than in connection with the management of his own interests,

and Aitken appears to have kept books for him. What, precisely, was the nature of his duties, or what the extent of the intimacy and confidence existing in their relations, does not appear. All that we know of his employment upon the books is what concerns the keeping of check books. So far as it appears, his employer's intentions, or purposes, in giving these checks to Charles, were not made known to him; nor does it appear to have been necessary, in the course of his employment, when drawing a check, that he should know. We can only presume that he was directed to draw it. The reason for receiving statements in entries made in the course of business, as an exception to the rule, is that they were made as a part of the regular work of one's livelihood, or profession, and that "the entry must have been of a fact within the personal knowledge of the declarant." (See Prof. Wigmore's [16th] edition of Greenleaf on Evidence, vol. 1, sec. 120a.) This must be so and where we know nothing more of a book entry than that it was made by a person, since deceased, in the regular course of an employment, we should not give trustworthiness to its statement of facts, further than as their import is of matters presumably within the personal knowledge of the person who made the entry by reason of that employment. The entries were, in their nature, private memoranda of cash transactions and they should be received with greater caution. (Wigmore on Evidence, sec. 1539.)

The entry on the stub of the first check for $1,000 to "Charles Hoagland act. to be paid $100· per week," would import an obligation for repayment; but the statement is purely hearsay, in that respect, and was not one required in performing the clerical duty of noting the data of the check to be drawn; nor is there any evidence showing, or permitting the inference, that the statement was within the personal knowledge of Aitken. The entry on the stub of the other check for $500, to George Leask & Co. "for loan to give to Charles F. Hoagland"

is open to the same legal criticism. But, furthermore, as to this statement, is it absolutely clear that the words "to give" did not mean a gift and that the loan was to the testator, for his temporary convenience, perhaps? At any rate, it is not beyond speculation. Why should these entries be held to color as loans the other payments by the checks making up the indebtedness claimed of $5,108.45, as to which there were no notations? The presumption of their being transactions of loans to Charles seems to have no sufficient basis in the mere circumstances that he had been a borrower and that he had little if any means of his own. In *Nay* v. *Curley*, (113 N. Y. 575, 577), this court stated the general rule to be that, in the absence of explanation, the presumption arising from the delivery of a check is that it was delivered in payment of a debt and not as a loan; but that it may "represent a loan or a gift, or money of the drawer, to be applied by the drawee to the use of the former as his agent or otherwise." The action, in that case, had been brought to recover the amount of an alleged loan made by the plaintiffs' intestate to defendant. To quote, further, from the opinion: "they, (the plaintiffs), proved that the check was delivered by their intestate to the defendant, the payee, on the day of its date; * * * its indorsement by the latter; that it was paid in due course, and that the defendant received the proceeds. *Up to this point no cause of action had been established.*" The opinion, then, went on to show that the defendant was examined by the plaintiffs as their witness and that they proved by his testimony that the deceased owed him no money; that this made out a *prima facie* case of a loan and that, having rebutted the presumption that the check was given in payment of a debt by such examination, the defendant was entitled to testify, as a witness in his own behalf, to explain, or qualify, his previous testimony. The point of the case, as an authority, is that the provision of section 829 of the Code of Civil Procedure might be

12

made inoperative and a personal transaction between the defendant and the deceased might be opened by the examination of the former as to a fact, or phase, of that transaction. But it has value, in the application to the similar facts of the present case, as an authority that no cause of action has been made out, until some evidence is adduced tending to show that the giving by the testator of his check to the defendant was neither the payment of a debt, nor for his own use, nor as a gift. The circumstances of this case sufficed to show that it was not in payment of a debt; but they did not suffice either to show, or as a basis for the presumption, that, as between the fact of a loan, or a gift, the transaction was of the former, rather than of the latter, kind. If the facts are as consistent with the one, as with the other, presumption, then neither should prevail: that is to say, the plaintiffs have made no case. The relations of the deceased with the defendant, as his nephew, the one being childless and wealthy, the other being poor and in bad health, and the evidence not showing lack of affection, might fairly warrant a presumption of a willingness in the former to assist his nephew's needs with moneys; taking, at one time, his note and at other times making the payments without requiring any written promise of repayment. He had made no will, so far as we know, before November 16, 1903, and he died January 30, 1904. All of the checks, now in question, except two, amounting to $4,650 of the $5,108.45, had been given to Charles before the date of the will. It may be that he regarded these payments as advancements to one, who was his heir at law and so closely related to him. A presumption has been defined to be a rule of law that courts and judges shall draw a particular inference from particular facts, or from particular evidence, unless and until the truth of the inference is disproved. (Stephen's Dig. Law of Evid. chap. 1, art. 1.)

In the case of *Stimson* v. *Vroman*, (99 N. Y. 74), the

circumstances, under which the check given by the testator to Stimson was held to have been a loan of money, differed. Having held that it was not given in payment of a debt, in view of Stimson's being at the time indebted to the deceased in a much larger amount, it was considered that his conduct upon certain occasions was such as to make it altogether probable that he had borrowed the money. A daughter of the testator testified that when she asked Stimson if her father had given him the money, he made no reply. An executor testified that, about the time of taking an inventory of the estate, he told Stimson that he "found that claim due the estate from him and that he made no reply." Judge EARL, speaking for this court, observed that "he was fairly called upon, in response to their questioning, to divulge the truth. He was not only speechless then, but he was speechless at the hearing before the surrogate when he was competent to deny or to explain what those witnesses had testified to." (p. 82.) Here, the defendant was not permitted, when offering himself as a witness, to give any testimony because objected to under the Code, (section 829), and there were no facts otherwise appearing in the evidence, which would parallel those of the case cited. The checks, now in question, were admissible to prove, and they did prove, that Charles received them and used the testator's moneys for some purpose. Their stub entries, made by a third person, even though secretary and bookkeeper, while competent as memoranda of the issuance of the checks produced, were incompetent to prove anything more, in the absence of evidence showing some personal knowledge in the writer.

The plaintiffs, to maintain their claim and to, still further, fortify the presumption of loans by the testator, offered in evidence certain check stubs in the testator's check book, bearing dates antecedent to the date of the defendant's note for $10,000, and having the name of Charles F. Hoagland, with figures representing sums of

money. They could not produce any checks corresponding to these stubs. They were admitted in evidence, over objection. and exception, and it is contended that they had the same probative force as if the checks had been produced and showed payments thereby, which "culminated in the note." As matter of fact, the figures in the stub entries aggregated but $9,900. We think that the admission of these check stubs was error. The entries were shown to have been in the handwriting of the deceased secretary, Aitken, and, aside from that one fact, there is no evidence, explaining, or bearing upon, them. As it has been, heretofore, observed, Aitken, though acting as secretary and bookkeeper for the testator, was not shown to have sustained to him any other than the formal relation. The entries were incompetent to prove any transaction, which they purported to represent. They do not prove, nor tend to prove, that the checks were ever signed by the testator, or, if signed, that they were delivered by him to Charles F. Hoagland, or, if delivered, that they were paid; all essential facts to be shown upon such an issue. The evidence was introduced by the plaintiffs to show that, after a number of checks had been given, the testator took from Charles his note for the repayment of their aggregate and that they, therefore, represented loans. They did not quite aggregate the amount of the note; but the contention is that they approximated the amount and were resumed, or merged, in the note. From this, as a "course of dealing established," it is argued that color was given to the issuance of the checks in question, subsequent to the note, and strengthened the presumption that they were loans, continued to be made to the testator's needy nephew. We think that the evidence was quite incompetent as furnishing a basis for any such presumption. Any inference therefrom would have to rest upon an assumption that checks had been issued, received by the payee and paid, and had been loans to him.

We think that inadmissible evidence has been allowed in aid of the plaintiffs' case.   For these reasons the judgment should be reversed and a new trial ordered; with costs to abide the event.

Cullen, Ch. J., Vann, Willard Bartlett, Hiscock, Chase and Collin, JJ., concur.

Judgment reversed, etc.