2. RECEIVERS (§ 194*)—ATTORNEYS—ALLOWANCE.
> The attorney of a receiver is not entitled to allowances for services rendered in collecting rents, drawing checks, etc.; such services not being legal services and being those which should be performed by the receiver.
>
> [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 385, 386; Dec. Dig. § 194.*]

Action by the Society for the Relief of Destitute Children of Seamen against Mary J. McDaniel and others. On motion to settle and pass receiver's accounts and for extra allowance to the receiver and for an allowance to his attorney. Account settled, and allowance to attorneys granted, but extra allowance to receiver denied.

Francis W. Pollock, of New York City, for the motion.
Frederick de Peyster Foster, of New York City, opposed.

GIEGERICH, J.   [1] There being no objection to the receiver's accounts, they are settled and passed, as prayed for. The receiver asks for an allowance, which is opposed by the plaintiff. The receiver's commissions, computed at the rate of 5 per centum upon the sums received and disbursed, considerably exceed the sum of $100. Section 3320 of the Code of Civil Procedure provides that where the commissions of a temporary or permanent receiver, so computed, shall not amount to $100, the court or judge may, in its or his discretion, allow the said receiver such a sum, not exceeding $100, for his commissions as shall be commensurate with the services rendered by said receiver. The court has therefore no power to grant an extra allowance to a receiver, where his commissions exceed $100. The receiver's application for an allowance is denied, and the amount of his commissions will be fixed when the order to be entered hereon is presented for settlement.

[2] Objection is also made by the plaintiff to an allowance to the receiver's attorney for services rendered other than of a legal character. Some of the services mentioned in the affidavit, and upon which the request for an allowance is made, consist of the receipt of rents and depositing the same in a trust company, the receipt of bills and drawing of checks for the receiver to sign, and other routine matters which should have been attended to by the receiver or by the agent employed by him to collect the rents and manage the property. No allowance can be made for such services. The sum of $200 is allowed for necessary legal services rendered and still to be rendered to procure the discharge of the receiver.

---

### In re CARRINGTON.

(Supreme Court, Appellate Division, Second Department. July 31, 1914.)

1. WITNESSES (§ 164*)—TRANSACTION OF PERSONS SINCE DECEASED—CHECKS.
> In support of a claim against decedent's estate for money alleged to have been loaned to him, claimant was permitted to introduce certain checks drawn to decedent's order, and indorsed by him, together with the stubs, and was also permitted to testify that the checks were loans,

though also testifying that, except in two instances, the word "loan" was placed on the check stubs after decedent's death. *Held*, that the checks and stubs evidenced a personal transaction between claimant and decedent, and were incompetent, under Code Civ. Proc. § 829, rendering a witness incompetent to testify concerning a personal transaction with a person since deceased, etc.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 683–686, 688–695; Dec. Dig. § 164.*]

2. EVIDENCE (§ 157*)—BEST EVIDENCE—CHECKS.

Where claimant issued certain checks to his brother, and after the the brother's death sought to prove the same as loans, the checks and stubs, if competent at all, were the best evidence of their contents, and it was therefore error for the court to permit claimant to read them into the record, with incompetent explanations that they were loans.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 460–470; Dec. Dig. § 157.*]

3. EXECUTORS AND ADMINISTRATORS (§ 221*)—LOANS TO DECEDENT—PROOF—CHECKS AND STUBS.

A claim could not be established against decedent's estate for alleged loans made to him, by merely introducing in evidence checks executed by claimant to decedent's order and the stubs from which the checks had been taken.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. § 221.*]

Appeal from Surrogate's Court, Suffolk County.

Judicial settlement of the accounts of Mary E. Carrington, as administratrix of John W. Carrington, deceased. From an order allowing the claim of intestate's brother for services and money alleged to have been loaned, the administratrix appeals. Reversed and remanded.

Argued before JENKS, P. J., and BURR, CARR, RICH, and PUTNAM, JJ.

Frank C. Barker, of New York City, for appellant.
Charles S. Carrington, of Brooklyn, for respondent.

RICH, J. The administratrix of the estate of John W. Carrington, deceased, appeals from an order of the Surrogate's Court of Suffolk county, allowing the claim of the respondent against the estate of her intestate to the amount of $1,646.59, for board and lodging from April 1, 1901, to April 1, 1910, 468 weeks, at $7 per week, $3,276, and for money loaned him between September 17, 1896, and November 15, 1911, amounting to $347.50, and for money advanced to the estate after the death of said intestate, $19.10, amounting in all to $3,642.60, with interest.

The surrogate disallowed so much of the claim as was represented by the items prior to November 30, 1905, which he held barred by the statute of limitations. As the order must be reversed because of rulings of the learned surrogate in the admission of evidence, an examination of facts involving the disputed account for board will not be made at this time.

[1] The claimant was sworn as a witness in his own behalf, and produced 17 checks, with their stubs, which he claimed were evidence

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes ·

of the loans made to the deceased. He was allowed to testify, over the appellant's objection that such testimony was incompetent under the provisions of section 829 of the Code, as to each check, that he made it, that it was indorsed by John W. Carrington, the deceased, and that it was paid. The witness was also shown each stub, and permitted to read the same into the record over defendant's objection and exception. The first stub was read: "September 18, 1896. John W. Carrington, loan, $20." The reading of the other stubs differed only in their dates and amounts; each having on it the word "loan," and so read.

The witness testified that, except in two instances, he did not put the word "loan" on the stubs until he made up his account after his brother's death; notwithstanding this, they were permitted to be read into the evidence in their entirety. In explaining a stub dated August 12, 1907, the claimant testified, over defendant's objection and exception:

"As the stub reads, I drew the check to his order for $55; but of that $55, it was only $25 that was a loan from me."

The checks on their face evidence personal transactions between the claimant and the deceased, which were emphasized by his testimony, as to each, that he made it, the deceased indorsed it, and it was paid. The stubs also evidenced similar personal transactions, and were emphasized by the incompetent testimony of the claimant that they represented loans made to the deceased by him.

[2] In addition, if competent at all, they were themselves the best evidence of their contents, and should not have been permitted to be read into the record with the incompetent explanations of the witness.

[3] The checks and stubs of themselves did not establish the alleged loans. Simons v. Steele, 82 App. Div. 202, 81 N. Y. Supp. 737; Leask v. Hoagland, 205 N. Y. 171, 98 N. E. 395, Ann. Cas. 1913D, 1199; Nay v. Curley, 113 N. Y. 575, 21 N. E. 698. It was only when the incompetent testimony of the claimant, characterizing them as loans, was admitted that they supported his contention. He cannot be permitted to accomplish indirectly what the statute prohibits him from accomplishing directly. Koehler v. Adler, 91 N. Y. at page 658.

Order and findings of the Surrogate's Court of Suffolk county reversed, with costs to the appellant, and matter remitted to said court for further proceedings. All concur.