(170 App. Div. 464)

## MARKS v. KELLOGG.

(Supreme Court, Appellate Division, First Department. December 10, 1915.)

1. WILLS ☞759—BEQUESTS—RELEASE OF DEBT.

Where testator's will gave his brother $75,000, should he survive testator, providing that testator canceled any indebtedness from loans he might have made the brother, so far as the indebtedness might remain unpaid at the time of testator's death, to the extent of $25,000, and the total indebtedness of the brother to testator, with interest to testator's death, did not exceed $25,000, the brother could recover the entire amount of the legacy, or $75,000, with interest.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1961–1966; Dec. Dig. ☞759.]

2. APPEAL AND ERROR ☞1008—CORRECTION OF FINDING.

On appeal from judgment entered pursuant to a decision on the trial of the issues before a referee, the Appellate Division may reverse findings of fact favorable to appellant and substitute therefor others favorable to respondent.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3960, 3962–3969; Dec. Dig. ☞1008; Reference, Cent. Dig. § 225.]

3. WILLS ☞761—DEBT OF LEGATEE—EVIDENCE—COMPETENCY.

In an action to recover a legacy left by testator to his brother, the will also providing that any indebtedness not in excess of $25,000 should be forgiven the brother, where, to prove an item of indebtedness, testator's executor put in evidence a letter from a third person to the testator, stating that: "On April 9th, we charged your a/c $1,500, and on April 13th you gave us your check for $1,000. Both these items went through Geo. H. Morgan [testator] 'B' a/a, and was intended, we think, for the benefit of J. B. M. [the brother]"—and a receipt of the third person, under date of April 13th, to the testator for a check of $1,000, reciting that it was "to be credited on account of J. B. M.," supplemented by the testimony of the witness who gave the receipt that he would not have done so, had he not received the check, no check showing either of the payments being produced, nor the brother's note therefor, or any correspondence between the brothers with respect to the loan, such evidence was incompetent to prove that a loan had been made.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1968, 1969; Dec. Dig. ☞761.]

4. PAYMENT ☞65—DRAFT—PRESUMPTION OF LOAN.

Where an alleged debtor to his brother owned securities and other property intrusted to such brother with authority to sell or pledge, and the alleged debtor drew a draft for $400 upon the brother so intrusted with his property, which was found, after the death of such brother, among his effects, it was not to be presumed that such draft represented a loan from the drawee brother to the drawer, but the presumption is that the transaction was a payment on account of an existing indebtedness by the acceptor of the draft.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 162–175, 196, 197, 199–201; Dec. Dig. ☞65.]

Appeal from Trial Term, New York County.

Action by Bertram L. Marks, as ancillary executor of the estate of John B. Morgan, deceased, against L. Laflin Kellogg, as executor of the last will and testament of George H. Morgan, deceased. From a judgment for plaintiff, defendant appeals. Findings modified, and judgment affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and SMITH, JJ.

Abram J. Rose, of New York City (William K. Hartpence, of New York City, on the brief), for appellant.

Louis Lowenstein, of New York City, for respondent.

LAUGHLIN, J.   This is an action by the ancillary executor of John B. Morgan, deceased, to recover a legacy of $75,000 under a codicil to the last will and testament of his brother George H. Morgan, deceased.   The will of George H. Morgan was executed on the 7th day of June, 1904.   By the seventh paragraph of the will he gave a legacy to his brother John as follows:

"I give and bequeath unto my brother, the Reverend John Brainard Morgan, D. D., of Paris, France, the sum of fifty thousand dollars, if he shall survive me.   In case of his death before me, then the said legacy to my said brother is to lapse, and the sum hereby bequeathed is to form part of my residuary estate.

"And I also give and bequeath unto my said brother, the Reverend John Brainard Morgan, D. D., any debt which at the time of my decease shall be and exist in my favor against my said brother, whether then due or payable or thereafter to become due and payable, together with any interest then due thereupon.   And if my said brother shall not be living at the time of my decease, I do direct and request that no proceedings be taken by my executors for the collection of the same against his estate, hereby discharging my said brother from all liability to me thereon."

[1] By a codicil executed on the 16th day of April, 1908, this legacy was changed as follows:

"I give and bequeath unto my brother, the Reverend John Brainard Morgan, D. D., of Paris, France, the sum of seventy-five thousand dollars ($75,000.00), if he shall survive me.   In case of his death prior to my death, then the said legacy to my said brother is to lapse, and the sum hereby bequeathed is to form a part of my residuary estate, and I do hereby cancel, annul and forgive any indebtedness to me or to my estate, arising out of any advances or loans which, during my life time, I may have made to my said brother, the said the Reverend John Brainard Morgan, D. D., or for other cause, so far as the said indebtedness or advances may remain unpaid at the time of my death to the extent and amount only with accrued interest of the sum of twenty-five thousand dollars."

The plaintiff's testator, John B. Morgan, had for a great number of years resided in Paris, France, and he died on the 13th day of January, 1912, having survived his brother George, who died on the 28th day of April, 1911.   George H. Morgan resided in New York, and left a widow and three children and a residuary estate of some $2,000,000. John B. Morgan was an Episcopalian minister, and conducted a church in Paris, and, while he had some property, the evidence showed that his brother George H. was interested in his success and welfare, and at times contributed financially to his aid, and manifested a willingness so to do whenever called upon or whenever necessary.

The appellant in his answer pleaded an indebtedness of $41,900, together with interest on the various items thereof from different dates, less the sum of $25,000 forgiven by the codicil; but, notwithstanding this admission in the prayer for relief in the answer, appellant insisted on the trial and claims on the appeal that, inasmuch as John sur-

vived George, there was no forgiveness of any of the indebtedness. The learned referee held otherwise, and we agree with his construction of the will in this regard, and do not deem it necessary to consider the contentions with respect thereto.

The learned referee also found that the total indebtedness of John to George at the time of the death of the latter, together with interest thereon, was less than $25,000, and therefore a recovery for the full amount of the legacy given by the codicil, together with interest thereon from one year after the death of the testator, was allowed. It is contended on the part of the appellant that the learned referee disallowed certain claims that should have been allowed, and by which the indebtedness owing to George from John would have been increased. We have reviewed the evidence and examined the findings in the light of the arguments presented on the appeal, and we agree with the learned referee that the total amount of the indebtedness owing by John to George, together with interest thereon down to the date of the death of the latter, did not exceed the sum of $25,000, and that therefore the plaintiff was entitled to recover the entire amount of the legacy together with interest thereon.

[2.] Counsel for appellant contends that some of the findings favorable to respondent should be reversed, and new findings favorable to appellant made, and counsel for respondent claims that certain findings favorable to appellant should be reversed and others favorable to respondent substituted therefor. This we have a right to do. Rives v. Bartlett, 215 N. Y. 33, 109 N. E. 83. There is some evidence to support every finding which appellant asks us to reverse, and the evidence on which he claims other findings favorable to him should have been made is, at most, open to conflicting inferences. The only requests to find for appellant not granted by the trial court about which we have any doubt with respect to whether the evidence preponderates in favor thereof are those relating to whether the payment by appellant's testator of four installments of interest, aggregating $2,000, on a mortgage on a farm at Newport, R. I., owned by respondent's testator, constituted loans to the latter. We do not deem it necessary here to discuss the evidence bearing on this question, or to determine whether an appellate court would be warranted in saying the findings should have been made, for we are convinced that other findings favorable to appellant are not supported by the evidence and should be reversed, and therefore, if we made findings favorable to appellant on this question of the payment of interest, the total indebtedness of John to his brother George at the time of the latter's death would be less than the amount forgiven by the codicil.

It appears that the testator and one Rowland, of the firm of Tilghman, Rowland & Co., each had an undivided one-half interest in a one-twentieth interest in the Sierra Madre Construction Company, and that on their subscription to such interest a call for $5,000 was made. It was not convenient for either of the other subscribers to pay his share, and at John's request George advanced the money to make the payment, and by letter requested John to send him a promissory note therefor. There was found with the papers of George a promis-

sory note made by John, bearing date on the day George advanced the $5,000 for this purpose, and for that amount. The referee found that this note was given on account of that payment by George for the benefit of John and his coadventurer. We think the evidence fairly sustains that finding, and that there is no foundation for the appellant's claim that an indebtedness of $5,000 on account of the advance of that amount for the purpose stated should have been found in addition to the indebtedness evidenced by the note.

[3] The referee also allowed two other items, one of $1,500 and one of $1,000, for payments made by George for John's account with respect to said Sierra Madre syndicate. The learned counsel for the respondent argues that those findings should be reversed on the ground that the evidence does not sustain them. We think this contention is well founded. There is no *competent* evidence that these payments were made by George. The evidence relied upon is a letter from Tilghman, Rowland & Co. to George stating, so far as material, that "on April 9th we charged your a/c $1,500, and on April 13th you gave us your check for $1,000. Both these items went through Geo. H. Morgan 'B' a/a and was intended, we think, for the benefit of J. B. M."—and a receipt given by Tilghman, Rowland & Co. under date of April 13, 1897, to George, for a check of $1,000, reciting that it was "to be credited on account of John B. Morgan," supplemented by the testimony of the witness who gave the receipt, to the effect that he would not have given a receipt if he had not received the check. No checks showing either of these payments was produced, and no note therefor, as in the other instance, was produced, and no correspondence was shown between George and John with respect thereto. Findings Nos. 10 and 11 should therefore be reversed.

[4] The learned referee allowed, as an item of indebtedness on the part of John to George, a draft for $400 drawn by John on December 10, 1897, at Paris, on George, to the order of John Munroe & Co. An employé of Munroe & Co., the Paris firm, testified that this draft was cashed for John by Munroe & Co. and forwarded to New York for collection, and there collected by John Munroe & Co., the New York firm. The draft was found with the effects of George. It appears that John owned securities and other property here which were intrusted to George, who at times had authority to sell or pledge certain securities of which he had charge for John. There is in these circumstances no evidence in favor of the appellant to take the payment of this draft out of the general rule that, in the absence of other evidence, a loan is not to be presumed from the making of a check or the acceptance and payment of a draft, but that it is to be presumed in such case that the transaction constituted a payment on account of an existing indebtedness by the maker of the check or the acceptor of the draft. Leask v. Hoagland, 205 N. Y. 171, 98 N. E. 395, Ann. Cas. 1913D, 1199; Matter of Carrington, 163 App. Div. 544, 148 N. Y. Supp. 952; Griffin v. Train, 90 App. Div. 16, 85 N. Y. Supp. 686; Mills v. McMullen, 4 App. Div. 27, 38 N. Y. Supp. 705; Matter of Baldwin, 11 App. Div. 551, 42 N. Y. Supp. 642; Sayles v. Olmstead, 66 Barb. 590.

It is true that slight evidence is sufficient to render this presumption of law inapplicable, but in order to warrant a recovery, or an offset, there must be some evidence to show that the check or draft was not given in payment of an antecedent indebtedness or as a gift, but was intended as a loan. Poucher v. Scott, 98 N. Y. 422; Stimson v. Vroman, 99 N. Y. 74, 81, 1 N. E. 147; Nay v. Curley, 113 N. Y. 575, 21 N. E. 698. These views lead to the reversal of the twelfth finding, and they sufficiently answer the contention made on behalf of the appellant with respect to three other drafts which were disallowed by the referee. We do not agree in all respects with the application of payments made by the learned referee in determining the balance owing from John to George, but the account would not be materially affected, and the result would not be changed, if we were to revise the decision, so that it would conform to our views in every respect, and we therefore deem it unnecessary so to do.

It follows that the findings should be modified in conformity with the views herein expressed, and the judgment affirmed, with costs. Settle order on notice. All concur.