In the Matter of the Estate of NATHAN S. JARVIS, Deceased.

Surrogate's Court, New York County, December 31, 1935.

*MacFarland, Taylor & Costello*, for the estate of Nathan S. Jarvis, and accounting executor Willard U. Taylor.

*O'Brien, Driscoll & Raftery*, for the legatee, objectant.

*Paskus, Gordon & Hyman,* for Mary E. Jarvis, executrix.

*Laurence L. Cassidy,* special guardian for infant.

DELEHANTY, S.  A legatee of deceased seeks payment of her legacy.  She was cited in this accounting proceeding and originally defaulted though advised that the accounting executor intended to charge off her legacy to satisfy a claim against her asserted by him in behalf of the estate.  Through counsel the legatee procured the opening of her default and her objections now on file require determination of her rights.

The proof establishes that deceased and objectant had separate accounts in a stockbroker's office.  For reasons not apparent on the face of the record deceased deposited with the stockbrokers a number of his own securities which he authorized them to hold to indemnify them against any loss which they might suffer by carrying the account of the objecting legatee.  The stockbrokers became bankrupt.  Upon learning of the bankruptcy, deceased offered to make good the debit balances in his own and in the objectant's accounts and demanded the return of the securities which he had deposited.  The bankrupts did not have them all and as a result deceased claimed that he was entitled to rescind the arrangement and to recover back his securities.  Reclamation proceedings followed which resulted in partial return of the securities.  Deceased filed a claim for conversion of the securities which could not be located and identified.  This claim was allowed.  The recovery of the securities and the allowance of the conversion claim of deceased wiped out a credit balance which (because of crediting her account with the value of deceased's securities) stood on the bankrupt's books in favor of the legatee.  Following the reclamation proceedings an appropriate order was made in the bankruptcy proceeding substituting zero in those schedules for the credit balance theretofore listed as due to objectant.  The order so made went no further. The trustee in bankruptcy thereupon threatened to sue objectant for $28,000 which he asserted was due the bankrupts.

In his reclamation proceedings deceased was materially aided by objectant's supporting affidavits.  Deceased thereby evaded payment of any part of objectant's debit balance for which his securities would have been liable had they not been misused by the bankrupts. He got back securities worth about $12,000.  The proceedings were completed by his executors and they took by assignment whatever claim the trustee in bankruptcy had against respondent.

A clear understanding of what the claim asserted against objectant really represents is necessary to a decision here.  The figures arrived at in the bankruptcy proceedings between the trustee and deceased's

executors did not relate to the account of objectant as such. They represent, *first*, the credit balance in deceased's account with the bankrupts, and *second*, the value of the securities of deceased which the bankrupts converted. Apparently an arrangement was reached between the trustee in bankruptcy and deceased's estate that a claim for about one-half of the sum thus computed would be allowed as a valid claim against the bankrupts' assets, that the trustee would accept the result reached in the reclamation proceedings and that the trustee in bankruptcy would also assign to the estate of deceased such claim as the bankrupts had against objectant. But the amount of that claim was never fixed in any proceeding where its fixation was an objective nor in any proceeding to which objectant was a party. No liability ever arose in favor of deceased because of any use of deceased's securities to discharge the debit balance in objectant's account. That balance was never paid in any degree. Deceased did not get all his securities back and in a sense it may be said that deceased lost by reason of having made the deposit of securities to guarantee objectant's account. It is true that except for the initial deposit there would have been no conversion and, so, no loss due to conversion. Claim of liability by objectant to deceased cannot be based on this loss. The conversion in its actual operation freed the unconverted securities from the pledge and permitted deceased to make a claim which but for the conversion he could not sustain.

Since the loss to deceased was not in any true sense a loss occasioned by any debit balance in objectant's account, but on the contrary was a supposed loss due to an act of conversion in which objectant did not participate, there exists in favor of deceased's estate no claim against objectant unless such claim arises by reason of this assignment to deceased's estate of the claim of the bankrupts against objectant. The participation by objectant in the bankruptcy proceedings in behalf of deceased and her knowledge that the effect of what was being done in the reclamation proceedings would create upon the books of the bankrupts an apparent indebtedness on her part to the bankrupts do not in themselves bar a contest by her of that claim of indebtedness in any proceeding which the trustee in bankruptcy or his assignee might initiate on proper process. She disputes the account. On the information in hand it might well be thought that objectant would probably be found liable to the bankrupts for a very substantial sum of money. However, no issue of that sort has been tried here. Deceased's executor has proceeded on the theory that the bankruptcy proceedings fixed objectant's liability and has rested on the assignment by the trustee in bankruptcy.

The question whether the assignment vested anything in the estate might be of consequence except for factors which in some aspects are of general application and in others of particular importance only in this proceeding. It is not within the legitimate sphere of an executor in the ordinary case to purchase claims unless they are claims against deceased requiring disposition to settle the estate. It may happen in particular circumstances that in the proper performance of their duties in administering an estate executors may find themselves vested with claims against others acquired as an incident to the payment of the debts of a deceased or the discharge of his obligations. When so acquired there is no reason why the claims may not be enforced by the executors. The circumstances which confronted the estate attorneys here were such as to leave in some doubt the financial relations between deceased and respondent and the stockbrokers. As matter of defense at least the estate attorneys might legitimately act as they did in the acquisition of the bankrupts' claims, if any, against respondent. They owed a duty to the estate to protect it against any claim which in any roundabout fashion might have been created against it had the trustee in bankruptcy obtained judgment against respondent and had the latter thereafter asserted a duty of deceased's estate to hold her harmless. By taking the assignment of the claim against respondent from the assignee in bankruptcy the attorneys for the executors foreclosed the possibility of any future attack in that way. Neither are the attorneys for the estate subject to any criticism for their manner of handling the claim after they acquired it. The circumstances were at least equivocal. They owed a duty to the estate to present those circumstances in a light most favorable to the estate. They gave objectant full information about their proposed course. They did not mislead her nor impose upon her. She failed to protect her own interests. That failure has been excused and she has now, through counsel, adequately presented to the court facts which materially alter the record which her default had presented.

It is now shown that deceased apparently recognized that in the whole history of the brokerage accounts and his connection therewith there was no basis for claim on his part against objectant. He had procured objectant's aid in support of his assertion that he had made no loan of his securities to her. While his and objectant's joint report of the transaction between deceased and the stockbrokers in relation to objectant's account is most unusual, it has been accepted by the court to which it was presented. Out of the whole transaction deceased may well have felt that he had benefited by reason of objectant's aid. His letter to his attorney was

written long after the facts were fully known to him and constitutes a repudiation of any thought that liability directly or indirectly could be enforced by him against objectant. With full knowledge of the whole situation deceased executed his will which gives to objectant the legacy now in dispute. In such circumstances the acquisition by the estate of deceased of whatever claim the bankrupt had against objectant was sound enough for use in defense but no other use can legitimately be made of the alleged claim.

A legatee is not an adversary of an estate. Demand for a legacy is not a demand in hostility to an estate. The administration of an estate contemplates not the reluctant but the willing payment of legacies if only the estate assets permit. So, the alleged claim of the bankrupts against objectant should not be admitted as an offset against objectant's legacy. To permit it so to be used would introduce into the administration of this estate a factor which should not be admitted. Offsets should be limited to claims existing *in favor of deceased at the time of death.* If claims against legatees of any other sort, acquired even for legitimate reasons in the course of an administration but representing claims not of deceased but of third parties, were to be admitted as offsets such offsets would involve speculations in estate administrations which could not be tolerated. Here deceased intended to benefit his legatee and at the time he drew his will had full knowledge of all the circumstances which eventually gave rise to this possible third-party claim which his executors now hold. To permit it now to be used as an offset would constitute approval of an investment of estate funds having the single effect of discriminating between a general and a residuary legatee both of whom deceased intended to benefit. The narrow field within which a set-off is permitted to function is indicated in Williams on Executors and Administrators (Vol. 2 [12th ed.], p. 1230 *et seq.*). (Compare *Leask* v. *Hoagland,* 64 Misc. 156; 136 App. Div. 658; 144 id. 138; 205 N. Y. 171; *Marks* v. *Kellogg,* 170 App. Div. 464.) In all the instances cited the claim against the legatee was said to have existed in favor of deceased prior to his death and not to have been acquired from a third person.

For the reasons stated the court holds that the legacy is payable to objectant. In view of her own default, however, interest will be allowed her only from the date of the filing of her objections.

Submit, on notice, decree settling the account accordingly.